# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

KELVIN MERRITT,          )
                                )
            Plaintiff,      )
                                )
vs.                         )     **Case No. 3:16-cv-536-GCS**
                                )
BRIAN MINER,         )
WILLIAM QUALLS, and   )
TONY PAYNE,           )
                                )
            Defendants.    )

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In this action, which was severed by the Court from Case No. 3:16-cv-102-SMY, Plaintiff Kelvin Merritt, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that Defendants Brian Miner and William Qualls retaliated against him in violation of the First Amendment because he filed grievances and pursued litigation (Count 2). Merritt also alleges that Defendant Brian Miner used excessive force against him while escorting him to segregation at Defendant Tony Payne's direction (Count 3). Now before the Court is a motion for summary judgment filed by Defendants (Doc. 79). Plaintiff, through counsel, filed a response, and the matter is ripe for ruling. For the reasons delineated below, the Court grants in part Defendants' motion.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Merritt was an inmate in the custody of the IDOC incarcerated at Menard Correctional Center ("Menard"). Defendant Brian Miner

was a correctional officer at Menard. Defendant William Qualls was a correctional sergeant, and Defendant Tony Payne was a correctional lieutenant. Merritt alleges that Miner and Qualls retaliated against him for filing grievances and for his litigation activity by targeting his cell for shakedowns and by destroying his property and documents on January 31, 2014. Merritt also claims that on January 31, 2014, Payne allowed Miner to escort Merritt into segregation and that, while escorting Merritt into segregation, Miner punched Merritt and slammed his head into a railing.

On January 31, 2014, Merritt was housed at West House, 7 gallery, cell 5 in Menard, and there was a shakedown of his cell. In affidavits attached to their motion for summary judgment, Defendants maintain that this shakedown was a random occurrence and that Miner and Qualls were unaware of any grievances that Merritt filed against them. (Doc. 80–2, 80–3, 80–4). Merritt claims that he filed grievances against Miner and Qualls in the months leading up to the January 2014 shakedown. (Doc. 80-1, p. 9-11). At his deposition, Merritt testified that Major Thompson told him that shakedowns should only occur once during a 14 day-period, and Merritt disputes Defendants' contention that a series of shakedowns he alleges took place during December 2013 and January 2014 were random. (Doc. 80-1, p. 18-20). Qualls participated in the January 31, 2014 shakedown, but Miner claims that he was merely present for it. (Doc. 80–2). Merritt maintains that Miner did participate, but he admits that he could not see the shakedown in progress and only heard it. (Doc. 80-1, p. 17, 23).

Following the shakedown, Merritt returned to his cell. When he returned, he saw damage to his property and his papers scattered about. (Doc. 80–1, p. 21). Defendants

deny observing any destruction of Merritt's property. (Docs. 80–2, 80–3, 80–4). They claim that Merritt returned to his cell and threatened Miner, telling him "you are a bitch, and you think you're a tuff [sic] mother fucker, now I am gonna do what I got to do." Merritt also allegedly told Miner that he would "whip [his] ass," telling him, "you better watch out." (Doc. 80–2). Miner stated in his affidavit that he then ordered Merritt to uncuff, but Merritt refused. Merritt, however, denies that he was ordered to uncuff and that he refused to uncuff because he believed that the lieutenant would not be called if he did. (Doc. 80–2; 80–1, p. 24-25). Though the parties dispute the reason why, they agree that Payne, the lieutenant, was called to Merritt's cell in the wake of the alleged confrontation. (Doc. 80–1, p. 24; Doc. 80–4).

After Payne arrived, Miner escorted Merritt from his cell to segregation. According to Defendants, Miner did so on Payne's order, but Merritt maintains that Miner volunteered for the task. (Doc. 80–1, p. 24-25; 80–2; 80–4). Miner stated in his affidavit that, while escorting Merritt to segregation, Merritt told him "your [sic] a bitch, I will whip your ass. You don't understand how things work here." (Doc. 80–2). Merritt denies he said that and claims instead that Miner punched him in the back of the head and slammed his head against a railing located in the west gallery, presumably without provocation. (Doc. 80–1, p. 26-27). Merritt also testified that Miner twisted his handcuffs, causing him pain, while walking him to segregation. (Doc. 80–1, p. 29). Miner denies that he physically harmed Merritt in any way. (Doc. 80–2).

## I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson,* 699 F.3d at 994; *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.,* 756 F.3d 542, 544 (7th Cir. 2014).

## II.    First Amendment Retaliation

To succeed on a claim of First Amendment retaliation, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First

Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), abrogated on other grounds by *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

In a First Amendment retaliation claim, the burden of proof is split between the parties. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013)(citing *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977)). First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* at 634-635. The burden then shifts to the defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* at 635.

## III. Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment extends to prohibit the use of excessive force on prisoners and detainees. The use of force is excessive when it involves the unnecessary and wanton infliction of pain. *See Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 667 (7th Cir. 2012). The Fourteenth Amendment right to due process affords pretrial detainees at least as much, if not more, protection against punishment as the Eighth Amendment's ban on cruel and unusual

punishment. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012); *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). When jailers are accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *See Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

ANALYSIS

## I.     Statute of Limitations

Defendants first argue that Merritt's claim is barred by the applicable statute of limitations. The applicable statute of limitations period for actions brought pursuant to 42 U.S.C. § 1983 is a state's period for personal injury torts. *See Kalimara v. Ill. Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). In Illinois, where the events in Merritt's complaint occurred, that period is two years. *See Woods v. Illinois Dept. of Children and Family Svcs.*, 710 F.3d 762, 765-766 (7th Cir. 2013); 735 ILCS § 5/13-202. The events described in Merritt's complaint occurred on or before January 31, 2014, but he did not file suit until May 13, 2016. At first blush, it appears that Merritt filed suit beyond the applicable statute of limitations, but the question is murkier, as the limitations period is tolled while an inmate attempts to exhaust his administrative remedies as he is required to by the Prison Litigation Reform Act ("PLRA"). *See Johnson v. Rivera*, 272 F.3d 519, 521-522 (7th Cir. 2001).

Merritt filed two grievances related to his allegations in this action. The first, filed March 5, 2014, complained about the shakedown of his cell and the destruction of his property. A counselor responded to the grievance on March 27, 2014. No grievance officer, Chief Administrative Officer ("CAO"), or representative of the Administrative Review Board ("ARB") responded to the grievance. Merritt contends that he submitted the grievance to the grievance officer, but he never received a response. Defendants argue that he received the counselor's response and stopped pursuing the grievance altogether.

Merritt filed a second grievance on March 21, 2014. He marked it as an emergency, but the grievance shows no response from the CAO, a grievance counselor, or a grievance officer. On April 28, 2014, the ARB determined additional information, namely institutional responses, was needed before it could address Merritt's complaint. There is a stamp on the grievance showing that it was received by the office of inmate issues on September 10, 2014, which Merritt argues is the first date he became aware of the ARB's ruling. Defendants do not address the meaning of the stamp or its implications in their motion.

This case is before the Court on a motion for summary judgment on the merits, not specifically on a motion for summary judgment on the issue of exhaustion. Defendants did not move for summary judgment on the issue of exhaustion in this action (*see* Doc. 19), nor are they raising Merritt's alleged failure to exhaust in the present motion. At summary judgment, disputes of material fact preclude ruling in favor of the moving party. With respect to the first grievance, Merritt claims that he submitted it to a grievance officer after his counselor responded to it, and he never received a response. If this

position is credited, then this failure by Menard officials to respond to the grievance renders the grievance process unavailable to Merritt, and, as such, he did exhaust administrative remedies, which entitles him to some period of tolling.

The question, then, is the appropriate length of the tolling period during which Merritt is deemed to have been attempting to exhaust his administrative remedies. In *Johnson v. Rivera*, the Seventh Circuit reversed a district court's ruling that the statute of limitations barred an inmate's claim where it became clear well within the statute of limitations that an inmate would not be able to complete the grievance process. 272 F.3d at 520. The Seventh Circuit did not specify how long the limitations period would be tolled where an inmate "would not obtain satisfaction via the prison's administrative procedures." *Id*. at 522 (citation omitted).

Taken to its logical end, the failure to respond to a grievance, whether intentionally or inadvertently, essentially could allow for indefinite tolling of the statute of limitations while an inmate awaits a response. While the Court strongly doubts that the statute of limitations can be tolled indefinitely in the case of unavailable administrative remedies, Defendants only briefly mention tolling in their motion, and neither party offers an end date for the tolling period as to the March 5, 2014 grievance. That said, Merritt's counselor responded to the grievance on March 27, 2014, and, once a grievance officer received it, the grievance officer is afforded two months to provide the CAO with a written recommendation. *See* 20 ILL. ADMIN. CODE § 504.830(e). As that deadline would have been some time after May 27, 2014, the Court need not reach a final decision as to when the period of tolling ended, as it is reasonable to assume that the period ended after May 13,

2014.

Drawing inferences and resolving disputes of fact in Merritt's favor, the undersigned concludes that, when he filed suit on May 13, 2016, Merritt did so within the applicable limitations period. Because the tolling period related to this first grievance demonstrates that Merritt timely filed this action, the Court need not resolve whether the March 21, 2014 grievance, which appears to have been filed directly with the ARB, tolled the statute of limitations.

## II.     First Amendment Retaliation

Defendants Miner and Qualls challenge whether Merritt engaged in protected activity. They point to his inability to recall the specific dates of any grievances he filed or who the grievances concerned, but Merritt testified that he filed "a lot" of grievances in November and December 2013 and January 2014. (Doc. 80-1, p. 9). He also testified that at least some grievances involved conduct by Defendant Miner and Defendant Qualls, but not Defendant Payne. (Doc. 80-1, p. 10). He estimated that he filed between 10 and 15 grievances during the months leading up to the increased shakedowns and that he complained about various issues, including medical issues and complaints about shakedowns. (Doc. 80-1, p. 11). Given Merritt's testimony, which Defendants dispute, the Court finds that a reasonable juror could conclude that he filed grievances during the relevant time period and that Merritt engaged in protected First Amendment activity.

Defendants also argue that there is no causal connection between Merritt's grievances and the events surrounding the shakedown of Merritt's cell on January 31, 2014. At his deposition, Merritt testified about the alleged harassment he suffered at

Defendants' hands, and, in particular, he claimed that Defendant Miner would make comments to him about filing grievances and would tell him to stop doing it. (Doc. 80-1, p. 20-21). He described almost daily cell shakedowns and a conversation with Major Thompson in which Merritt was allegedly told that shakedowns should not happen that often. Defendants dispute Merritt's claims, but there remains sufficient evidence to create a genuine issue of material fact as to whether Merritt was harassed because he filed grievances. If a juror believed that Merritt filed grievances and that the comments about filing too many were made, then it could be reasonable to conclude that the alleged increase in shakedowns and the alleged events of January 31, 2014, were retaliatory in nature. As such, the Court concludes that issues of fact preclude the entry of summary judgment on Merritt's First Amendment retaliation claim.

### III. Excessive Force

Only persons who cause or participate in an alleged constitutional deprivation are responsible under § 1983. *See Greeno v. Daley*, 414 F.3d 645, 656-657 (7th Cir. 2005). Defendant Payne argues that he is entitled to summary judgment on Merritt's excessive force claim because he was not involved personally in any alleged use of force.[1] Payne either gave the order for Miner to escort Merritt to segregation or allowed Miner to volunteer to do so. Regardless of this dispute, there is no evidence that Payne directed Miner to use excessive force, nor is there sufficient evidence to allow a reasonable juror to conclude that he turned a blind eye to the possibility that Miner would do so. Merritt

---

[1]     Defendant Miner does not move for summary judgment on Merritt's excessive force claim.

maintains that Defendants whispered to each other before Miner volunteered to escort him to segregation, but that alone is insufficient to allow a reasonable juror to conclude that Payne directed Miner to be violent or that Payne let an attack occur. Without sufficient evidence that Payne was personally involved in the use of force or recklessly allowed excessive force to be used by Miner, Merritt's claim against him cannot survive summary judgment.

## IV.    Qualified Immunity

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly established' a right must be defined so clearly that every reasonable official would have

understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015)(citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

Defendant Payne is entitled to qualified immunity because, even when the facts are taken in the light most favorable to Merritt, he engaged in no conduct that violated Merritt's constitutional rights. As to Defendants Qualls and Miner, the same cannot be said. When all inferences are drawn in Merritt's favor and the facts are drawn in the light most favorable to him, Defendants' conduct could be said to violate Merritt's constitutional rights. As such, Defendants Qualls and Miner are not entitled to qualified immunity.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Doc. 79) is granted in part and denied in part. At the close of this case, the Clerk of Court shall enter judgment in favor of Defendant Tony Payne and against Plaintiff Kelvin Merritt on Count 3. Count 2 remains pending as to Defendants Miner and Qualls, and Count 3 remains pending only as to Defendant Miner.

**IT IS SO ORDERED.**

Dated:  March 9, 2020.

_____
GILBERT C. SISON
United States Magistrate Judge